STATE of Missouri, ex rel. FAMILY SUPPORT DIVISION–CHILD SUPPORT ENFORCEMENT, and Tracy L. Stude, Respondents,

v.

Terry Eugene LANE, Appellant.

No. WD 70715.

Missouri Court of Appeals, Western District.

June 8, 2010.

Terry Eugene Lane, Lee's Summit, MO, pro se.

James F. Kanatzar, Jackson County Prosecuting Attorney, R. Benjamin Winfrey and Raoul C. Stitt, Assistant Prosecuting Attorneys, Kansas City, MO, for Respondent.

Before Division I: KAREN KING MITCHELL, Presiding Judge, and LISA WHITE HARDWICK and CYNTHIA L. MARTIN, Judges.

KAREN KING MITCHELL, Presiding Judge.

The State of Missouri, ex rel. Family Support Division—Child Support Enforcement ("Division"), and Tracy L. Stude (collectively, "Respondents") applied to the

Circuit Court of Jackson County for a contempt citation against Appellant Terry Eugene Lane, for failure to pay child support. On November 18, 2008, Commissioner Patrick Campbell held a hearing on Respondents' application. At the hearing, the Commissioner found Lane to be in contempt. On January 29, 2009, the Commissioner entered a written order, finding Lane in contempt and remanding him to the department of corrections, but staying the execution of the judgment on the condition that he pay $50 a month to purge his contempt. The same day, the circuit court, the Honorable Christine Sill-Rogers presiding, entered judgment against Lane, adopting Commissioner Campbell's findings. On February 27, 2009, Lane filed a notice of appeal, challenging the January 29, 2009 order. On April 7, 2009, the Commissioner remanded Lane to the Jackson County Department of Corrections for failure to comply with the terms of the court's stay of execution. We reverse and remand.

### Facts and Procedural Background[1]

■ On September 26, 1991, the State of Kansas, ex rel. Secretary, Department of Social and Rehabilitation Services, and Tracy L. Meredith,[2] as the next friend of her child, filed a petition for paternity and child support against Lane in the Circuit Court of Jackson County. On January 28, 1992, a sheriff's return of service and an affidavit of service were filed in the circuit court, affirming that, on that same date, Lane was personally served with a copy of the summons and a copy of the petition.

On April 28, 1992, the circuit court entered a default judgment for paternity and child support, finding Lane to be the natural father of Stude's child and ordering Lane to make child support payments of $146.00 per month.

On January 11, 2008, the Respondents filed an application for a contempt citation against Lane for failure to pay child support as required by the 1992 default judgment.[3] On November 18, 2008, the Commissioner held a hearing on the application for contempt. There, Lane argued that he was not in contempt because he was not the father of Stude's child and because he was not served with the petition for paternity and child support.

The Commissioner found that there was insufficient evidence to overcome the presumption that Lane had been served in the underlying action. Then, the Commissioner found that Lane willingly violated the child support judgment and was therefore in contempt. The Commissioner established a $35,498.00 purge amount and remanded Lane to the custody of the department of corrections, but he stayed execution of the judgment ("Stay of Execution"), upon the condition that Lane pay $50.00 to a trust account every month beginning December 15, 2008, and upon the fifteenth of every month thereafter. At the hearing, the Commissioner stated as follows:

> The Court finds that—that on multiple prior occurrences that the Court has had conversations with Mr. Lane and has advised him of his right to have an attorney, and that Mr. Lane has ap-

---

1. On appeal from a court-tried case, we review the facts in the light most favorable to the judgment. *Wallace v. Ferreira*, 830 S.W.2d 571, 573 (Mo.App. W.D.1992).

2. Although the record is silent on this point, we assume that Tracy L. Meredith is Respondent Tracy L. Stude.

3. The record contains no explanation regarding why the application for contempt was not filed earlier.

peared in person without an attorney here today, and that by his actions has waived his right to an attorney.

However, although the record does reflect that the Commissioner had previously advised Lane that he had a right to an attorney, the record does not demonstrate that the Commissioner (or anyone else) informed Lane that he had a right to have counsel appointed if he could not afford counsel. Rather, the Commissioner told Lane that consulting an attorney "is totally in your hands" and stated that Lane should consider whether the *investment* in a lawyer would be wise.

On January 29, 2009, the Commissioner entered a written order reflecting his oral pronouncements from the bench, and the circuit court entered judgment, adopting the Commissioner's findings.

Lane made no payments. On February 27, 2009, Lane filed a notice of appeal from the January 29, 2009 order. At a hearing on April 7, 2009, the Commissioner lifted the Stay of Execution and remanded Lane to the Jackson County Department of Corrections because Lane had refused to comply with the Stay of Execution's terms. Lane informed the Commissioner that he was unwilling to pay as ordered because he felt his rights had been violated. Specifically, Lane stated: "[T]he State didn't appoint me a lawyer, you know what I'm saying? I asked for one. You didn't appoint me a lawyer." The Commissioner did not respond to this statement.

■ The Commissioner set bond at $35,498.00, but it was subsequently lowered to $200.00. Lane posted bond on April 27, 2009, and the circuit court reinstated the Stay of Execution on June 25, 2009.[4]

### Standard of Review

In a court-tried case, our standard of review is that explained in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *Martin v. Dir. of Revenue*, 248 S.W.3d 685, 687 (Mo.App. W.D.2008). Accordingly, we will affirm the circuit court's judgment unless (1) it is against the weight of the evidence; (2) it is not supported by substantial evidence; or (3) the circuit court misstated or misapplied the law. *Id.*

### Legal Analysis

On appeal, Lane argues that his due process rights were violated and that he was deprived of his right to a "meaningful defense."

### 1. Due Process

■ Under the Sixth Amendment to the United States Constitution, the accused has a right to counsel at all critical stages of a criminal proceeding, *United States v. Wade*, 388 U.S. 218, 224–25, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), in which jail time is actually imposed. *Argersinger v. Hamlin*, 407 U.S. 25, 40, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972).

---

4. Lane filed his notice of appeal on February 27, 2009, appealing from the January 29, 2009 order, the execution of which was suspended at the time he filed his notice of appeal. A judgment for contempt does not become final until it is enforced. In this case, the order became final when the stay was lifted and actual imprisonment was imposed. *Melson v. Melson*, 292 S.W.3d 375, 378–79 (Mo.App. W.D.2009). Thus, Lane's notice of appeal was filed prematurely. However, "[i]n any case in which a notice of appeal has been filed prematurely, such notice shall be considered as filed immediately after the time the judgment becomes final for the purposes of appeal." Rule 81.05(b). Thus, Lane's notice of appeal is deemed filed immediately after actual imprisonment was imposed. Respondents do not contend that the court's reentry of the stay, subsequent to Lane's incarceration, renders this appeal moot, and we therefore address the merits.

The right to counsel exists in state, in addition to federal, proceedings, by virtue of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Gideon v. Wainwright*, 372 U.S. 335, 344–45, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). For the purposes of triggering a defendant's right to counsel under the due process clause, the distinction between a "criminal" and a "civil" proceeding is irrelevant if the outcome of the civil proceeding is imprisonment. *Walker v. McLain*, 768 F.2d 1181, 1183 (10th Cir.1985) ("The right to counsel, as an aspect of due process, turns not on whether a proceeding may be characterized as 'criminal' or 'civil,' but on whether the proceeding may result in a deprivation of liberty.").

As noted above, Lane argues that his due process rights were violated and that he was deprived of his right to a "meaningful defense." Although Lane did not brief the specific issue of his due process right to counsel, we may, within our discretion, and on our own initiative, address issues that affect a defendant's federally mandated constitutional rights. *State v. Johnson*, 628 S.W.2d 904, 907 (Mo. App. E.D.1982). *See also State v. Puckett*, 230 Kan. 596, 640 P.2d 1198, 1201 (1982) ("[A]lthough ordinarily an appellate court will not consider an issue which has not been raised in the trial court or which has not been raised by the parties on appeal, the court does have the power to do so in exceptional circumstances, where consideration of the new issue is necessary to serve the ends of justice or to prevent a denial of fundamental rights.").[5] The right to counsel is such a right. *Gideon*, 372 U.S. at 344–45, 83 S.Ct. 792. Lane cannot be said to have waived his right to counsel because the record does not reflect that he was ever advised that he had a right to have counsel appointed for him should he be found to be indigent. *Walker*, 768 F.2d at 1185.[6] Moreover, assuming the right to counsel has attached, a complete denial of the right (as opposed to a denial of the right where the defendant was provided with counsel, but counsel was incompetent) constitutes reversible error irrespective of whether the violation caused prejudice. *Rose v. Clark*, 478 U.S. 570, 577–78, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986) (disapproved of on another ground in *Yates v. Evatt*, 500 U.S. 391, 402–03 n. 8, 111 S.Ct. 1884, 114 L.Ed.2d 432 (1991)).

## 2. The Right to Counsel as Applied to Civil Contempt

Except for cases of direct contempt, where the courts have the inherent

---

5. Following oral argument, we asked that both parties provide this court with additional briefing on the following issues:
   1) Whether and under what circumstances the right to counsel attaches in a civil contempt case;
   2) Whether the right to counsel in fact attached in this case;
   3) Assuming that the right to counsel attached, whether Appellant was ever informed of the full extent of that right; and
   4) Whether Appellant waived any right to counsel.
   Additional briefing was received from both Appellant and Respondent.

6. There is no substantial evidence in the record on appeal to support the Commissioner's finding that Lane waived his right to counsel by his actions. Any waiver of the right to counsel must be made knowingly and intelligently. *State v. Black*, 223 S.W.3d 149, 153 (Mo. banc 2007). Again, there is nothing in the record that indicates that Lane was ever informed that, if indigent, he had the right to have counsel appointed. Respondent, in its additional briefing, was unable to cite to anything in the record that demonstrates that Lane was advised of his right to appointed counsel or that indigency was ever evaluated. Under these circumstances, we cannot find a knowing and intelligent waiver of Lane's right to counsel. *Walker*, 768 F.2d at 1185.

authority to maintain the order, safety, and/or integrity of the courtroom and the judicial process by ordering contemnors imprisoned immediately, the circuit court, in civil contempt actions, must either (1) predetermine that the offense is of insufficient gravity to warrant jail time; or (2) advise the defendant that he has the right to be represented by counsel and that, if found to be indigent, he has the right to have counsel appointed. *Smith v. Kintz,* 245 S.W.3d 257, 260 (Mo.App. E.D.2008); *Hunt v. Moreland,* 697 S.W.2d 326, 329–30 (Mo.App. E.D.1985).[7]

■ In the latter case, the circuit court does not have the statutory authority to compel the public defender to represent the defendant in a civil action, *State ex rel. Sterling v. Long,* 719 S.W.2d 455, 455 (Mo. banc 1986); *Albers v. Koffman,* 815 S.W.2d 484, 485 (Mo.App. W.D.1991); however, the circuit court has the inherent authority to appoint members of the bar to represent the defendant. *See State ex rel. Shaw v. Provaznik,* 708 S.W.2d 337, 340 (Mo. App. E.D.1986) (noting that the inherent power to appoint counsel exists but holding that such power cannot be used to appoint a public defender in his or her capacity *as*

public defender). When neither the state legislature nor the subject county has provided a mechanism for the defense of civil contempt actions, *see Albers,* 815 S.W.2d at 485, the court's inherent power to appoint counsel appears to be the only mechanism by which an indigent defendant, facing actual imprisonment in a civil case, can be afforded his constitutionally guaranteed right to counsel. The court must use that power when the right to due process requires it. U.S. Const. amend. XIV.

■ Here, the Commissioner informed Lane that he had a right to counsel and advised him to consult an attorney. However, the Commissioner did not inform Lane that the court would appoint an attorney for him if he could not afford one. Under these circumstances, Lane's right to due process prior to incarceration was not met. *Argersinger,* 407 U.S. at 40, 92 S.Ct. 2006; *Hunt,* 697 S.W.2d at 329–30. Instead, the court should have either (1) predetermined that Lane's failure to pay child support would not result in jail time; or (2) advised Lane that he had a right to counsel and that, if he were found to be indigent,[8] counsel would be appointed un-

7. We note that the rule we apply today represents the majority view, *see Mead v. Batchlor,* 435 Mich. 480, 460 N.W.2d 493, 499 (1990) ("Our review indicates that every federal circuit court of appeals confronting the issue now before us has concluded that the Due Process Clause of the Fourteenth Amendment at least requires that an indigent defendant in a nonsupport proceeding may not be incarcerated if he has been denied the assistance of counsel."), but that a minority position exists that would hold that the right to counsel does not necessarily apply to civil contempt actions, even when actual imprisonment is imposed. *See, e.g., Rodriguez v. Eighth Judicial Dist. Court,* 120 Nev. 798, 102 P.3d 41, 48 (2004). We agree with the approach taken by the Eastern District of this court because it is in harmony with the "actual imprisonment" guidepost established by the U.S. Supreme Court in criminal cases, *see Argersinger,* 407

U.S. at 40, 92 S.Ct. 2006, and, like the court in *Walker,* 768 F.2d at 1183, we see no rational distinction between a "civil" case and a "criminal" case when the result in each is actual imprisonment. However, given the absence of direct authority from this district of the court of appeals, the Missouri Supreme Court, or the U.S. Supreme Court, the circuit court's judgment, though it must be reversed, is understandable.

8. For criminal matters, it is the public defender who initially determines whether a defendant is indigent. § 600.086.3. Since the public defender has no role under these circumstances, *Albers,* 815 S.W.2d at 485, the court will have to conduct its own inquiry when the defendant claims indigence. On remand, Lane, should he claim indigence, will have the burden of persuading the court that he cannot afford an attorney. *Cf.* § 600.086.6.

less Lane chose to waive his right to counsel. *Hunt,* 697 S.W.2d at 329–30.

 Moreover, the State does not argue that this was a case of "direct contempt," where courts may immediately order a contemnor imprisoned in order to protect the order, safety, and/or integrity of the courtroom or judicial process, *see id.,* and we find nothing in the record that would indicate that Lane committed direct contempt. Direct contempt occurs in the immediate presence of the court or so near as to disrupt the court's proceedings. *Smith v. Pace,* 313 S.W.3d 124, 129–31 (Mo. banc 2010). The court may punish direct contempt summarily if the judge actually witnessed the conduct constituting contempt. *Id.*

Here, the conduct constituting contempt—Lane's failure to pay child support—occurred outside the presence of the court. The Commissioner advised Lane in advance that jail time would be imposed if Lane refused to make payments pursuant to the Stay of Execution. When Lane did not do so and indicated at the hearing that he would continue to refuse to do so, the Commissioner remanded him to the custody of the department of corrections. There was no immediate danger to the order, safety, or integrity of the courtroom or the judicial process, apart from the disrespect of the court's instructions that is inherent to any contempt citation.

Thus, under the circumstances of this case, the circuit court could not impose actual imprisonment absent either (1) appointment of counsel; (2) Lane's knowing and intelligent waiver of the right to counsel; or (3) a finding that Lane is not indigent. *Argersinger,* 407 U.S. at 40, 92 S.Ct. 2006; *Hunt,* 697 S.W.2d at 329–30.

As such, we find that the circuit court misapplied the law. *Murphy,* 536 S.W.2d at 32.

Accordingly, we reverse and remand for proceedings consistent with this opinion.

LISA WHITE HARDWICK and CYNTHIA L. MARTIN, JJ., concur.

---

We recognize that the case may be rare that a defendant *has* the ability to purge his contempt *but does not have* the ability to hire an attorney, but, at a minimum, Lane should be given the opportunity to make this showing.